STATE *ex rel.* ATTORNEY-GENERAL, Plaintiff, *v.* WILLIAM H. BOWEN, Defendant.

1. *Officers—Clerks, Duties of.*—The duties of the clerk of a County Court are essentially ministerial; so far as the entering of the orders of the court are concerned, or the performance of any other act which may be legally or properly required of him by the court, he is without discretion; he has no power to judge of the matters to be done, and must obey the mandates of the tribunal whose officer he is.

2. *Officers—Clerks of Courts—Misdemeanors in Office.*— The refusal of the clerk of a County Court to produce the books and papers in his office before the court for its inspection and action thereon, when thereto required, is a misdemeanor in office.

*Misdemeanor in Office.*

FAGG, Judge, delivered the opinion of the court.

This is a prosecution against the defendant as clerk of the County Court of Lafayette county for misdemeanor in office. It is instituted by the Attorney-General upon the request of the County Court of said county in the manner authorized by chapter 24 of the General Statutes of 1865.

The newly elected justices of the County Court for said county after receiving their certificate of election, but without commissions from the Governor, as required by law,

met and assumed to discharge the duties of their said offices. The election was held on the 6th day of November, 1866, and the meeting took place on the 17th day of the same month.

*First*—It is charged that the defendant, then acting as clerk of said court, did knowingly, wilfully and unlawfully deface the record books of said County Court by entering therein the proceedings and orders of Jesse Schofield, W. S. Thomas, and A. W. Litton, who thus assumed and pretended to be acting as said justices, well knowing that they had not been commissioned by the Governor of the State.

*Second*—That defendant did, at same last mentioned date, upon the order of the persons so assuming and pretending to act as justices of said County Court, knowingly, wilfully and unlawfully issue commissions to certain officers of Lafayette county.

*Third*—That at the December term, 1866, of the County Court of said county, the said defendant "did knowingly, wilfully and unlawfully retard and prevent the lawful business of said County Court from being done, by failing, neglecting and refusing to produce into said County Court, then being in session for the transaction of business, as it lawfully might, the necessary books, papers and records of said County Court, when thereto lawfully required, and left and abandoned said County Court at the term thereof aforesaid, and remained away therefrom in contempt of said court and greatly to the injury of the people of Missouri," &c.

The reply of the defendant to the first two charges substantially admits the facts charged in the complaint, but avers that the said Schofield, Thomas and Litton were at the time duly authorized to act as justices of the County Court without commissions from the Governor, and that he was guilty of no offence against the law by acting in obedience to their orders.

There is also a denial of the third charge, with an averment that on the day of the meeting of the County Court in December, being the 3d day of the month, the defendant

State ex rel. Attorney-General v. Bowen.

was violently assaulted in his office by an armed band of ruffians; that he was cruelly beaten so as to be unfit for business for many weeks, and compelled to leave his home in the town of Lexington in order to save his life. That James Chaney, John Kirkpatrick, and Thomas Wernwagg, who were the acting justices of the County Court of said county previous to the general election on the said 6th day of November, met on the said 3d day of December, 1866, and "under the power of an armed band of men again undertook to act as the County Court of said county," &c. It is further stated that defendant's son was at the time his deputy in said office, and that he remained in charge of the same ready and willing at all times up to the 17th day of December, 1866—at which time he was driven off by an armed band of men—to discharge all of the duties of the office, and in all things to obey the orders and requirements of the County Court of said county.

The facts found by the court upon the trial are, substantially, that the justices elected on the 6th day of November, 1866, met on the 12th day of said month and determined the length of their respective terms by lot. The proper facts were certified to the Governor, but no commissions were issued to them until the 28th day of December following. They met again on the 17th day of November, and proceeded to discharge the duties of a County Court, at which time the entries were made and the acts done as charged against the defendant.

It is apparent that the two first charges may be considered together, as both really depend upon the settlement of the same question. The office of the clerk of the County Court is essentially ministerial in its character. So far as the entry of the orders of the court are concerned, or the performance of any other act or thing which may be legally and properly required of him by the court, he is without discretion; he has no power to judge of the matter to be done, and must obey the mandates of the tribunal whose officer and servant he is. It will be seen at a glance that here was

a contest between two bodies, both claiming to be in contemplation of law the County Court of Lafayette county. There is nothing in the character of the office itself, or the laws of the State defining and regulating its powers and duties, which could authorize the clerk to sit in judgment for the purpose of deciding it. The legality of the proceeding of the court in no way depended upon his opinion as to who was rightfully holding the office of county justices of Lafayette at the time his acts are complained of. If the orders and proceedings entered by the clerk under the direction of the persons thus assuming to act as justices of the County Court were not authorized by the law, they are to be treated as mere nullities, but not as a mutilation or defacement of the record. So far as these two charges are concerned there is nothing in the testimony to show that the defendant acted wilfully or corruptly, and he must be found " not guilty " on both.

The third charge involves not only the question of the right of these two opposing bodies legally to discharge the duties of a County Court, but also the liability of this defendant for the acts of his deputy. The first of these questions arose in the case of State ex rel. Att'y-Gen'l v. Hixon, decided at the present term of the court, and need not be discussed again. It was the justices composing the old court who met on the 3d day of December, 1866, and demanded of the deputy clerk the production of certain records and papers belonging to the office, which demand is alleged to have been disregarded. These justices were rightfully exercising the powers pertaining to their offices. It is shown that the commissions issued to their successors were not received until the 30th day of the same month, and that two of the newly elected justices qualified on the succeeding day; the other, some time afterwards. The demand made upon the clerk through his deputy was not complied with. There was an absolute refusal on his part to obey the orders of the court, and by him stated to be under the express direction and authority of the principal. The liability of the clerk in

this case is clearly fixed by the fact of an express order and direction to his deputy. It is not necessary that the facts accounting for the absence of the clerk on that occasion should be considered at all. We think that the proof fails to sustain the averments in the defendant's answer as to the facts of his being driven from his office and home by an armed force. This, however, is not material. His deputy remained in the undisturbed possession of the office so far as the proof shows, and he was expressly charged by the defendant not to deliver up certain records and papers in his custody even for the inspection of the County Court itself. A part of these papers were the poll-books of the county used at the election held on the 6th day of November, 1866. This was a wilful refusal upon his part to perform a duty clearly incumbent upon him, and must have proceeded from a motive wholly inconsistent with his duties as a public officer. It is an offence of a grave and serious character, and one that the interests of the public requires should be punished.

The defendant must be found guilty upon the third charge. His office having expired by limitation on the first day of January, 1867, his punishment will be assessed at a fine of one hundred dollars, with the further order that he pay the costs of this proceeding. The other judges concur.