THE SALOMONI and another.

FEOL *v.* THE SALOMONI and another.

*(District Court, S. D. Georgia, E. D.* December 7, 1886.)

1. CLERK OF COURT—UNITED STATES DISTRICT COURT—IN ADMIRALTY—JURIS-
DICTION—TRESPASS.
   If the clerk of the United States district court issue process under a stand-
   ing admiralty rule of the court, he cannot be regarded as a trespasser, even
   though the court had no jurisdiction in the premises.

2. SEAMEN—CONTROVERSY BETWEEN SEAMEN AND OFFICERS—JURISDICTION—
JUSTICES OF THE PEACE—CONSULS—TREATY BETWEEN UNITED STATES AND
ITALY—REV. ST. U. S. §§ 4546, 4547.
   Under the treaty between the United States and the kingdom of Italy, stip-
   ulating that "consuls general, consuls, vice-consuls, and consular agents shall
   have exclusive charge; * * * and shall alone take cognizance of questions,
   of whatever kind, that may arise, both at sea and in port, between the captain,
   officers, and seamen, without exception, and especially of those relating to
   wages, and the fulfillment of agreements reciprocally made," a justice of the
   peace has no power, under sections 4546 and 4547 of the Revised Statutes of
   the United States to compel the clerk to issue admiralty process against an
   Italian ship for the wages of a seaman thereon.

3. SAME—ASSAULT ON SEAMAN IN UNITED STATES PORT—DISTRICT COURT—
JURISDICTION.
   Where the master of an Italian vessel, in one of the ports of the United
   States, is guilty of a barbarous and malicious assault upon a seaman on such
   vessel, he is not protected by the terms of the consular compact above quoted,
   and the district court may, in its discretion, take jurisdiction of the case, for
   the protection of the seaman, and the redress of his wrongs.

*(Syllabus by the Court.)*

In Admiralty. Seamen's wages. Rule against the clerk.
*Henry McAlpin,* for the rule.
*Denmark & Adams, contra.*

SPEER, J. This is a rule sought against the clerk of this court by
Henry McAlpin, as proctor for Frank Feol. It appears, from the peti-
tion filed, and the answer of the clerk thereto, that Feol was a seaman on
the Italian bark Salomoni. On the fifteenth day of September last he
made an affidavit before McNAUGHTON, a justice of the peace, alleging
an assault upon him, made by Francisco Grasso, the master of the bark,
while she was lying at the wharf in the harbor of Savannah. The affi-
davit was intended to be in accordance with sections 4546 and 4547 of
the Revised Statutes of the United States, to compel the payment of the
wages due affiant, and to obtain his discharge. It does not appear, from
these sections, that they embraced the subject of the discharge of the
seaman, but they relate simply to his claim for wages. A summons was
issued by the justice, directed to the master and owner of the vessel,
commanding them to appear before him to show cause why process of
attachment should not issue. A copy of the summons was served per-
sonally on the master of the bark by the constable of Justice McNAUGH-
TON's court, but the master treated the summons and the justice's court

with great indifference, and, indeed, refused altogether to appear. Whereupon the justice issued his certificate to the clerk of the district court, in accordance with section 4547, Rev. St.

THE CERTIFICATE.

"*Savannah, Chatham Co., Georgia.*
"OFFICE OF McNAUGHTON, JUSTICE OF THE PEACE,
"September 17, 1886.

"The master against whom the within summons issued neglects to appear, and I certify to the clerk of the district court of the United States for the Eastern division of the Southern district of Georgia that there is sufficient cause of complaint whereon to found admiralty process against said vessel.

"In witness whereof I have hereunto set my official signature and seal of office this seventeenth day of September, A. D. 1886.

[Seal.]         "McNAUGHTON, N. P. & Ex. O. J. P., C. Co., Ga."

On the eighteenth day of September, the seaman also filed his libel in this court, and prayed process for the recovery of his wages. He made no claim for compensation for the assault, nor did he ask to be discharged. The clerk declined to issue process, either on the certificate of the magistrate or upon the libel. The reason he assigns for this refusal was his knowledge of the want of jurisdiction by this court of a difference of this character, between the master and seaman of an Italian vessel, both Italian subjects. He answers that he was aware that, under the treaty between the United States and Italy, this jurisdiction had been surrendered by the government of this country.

The article of the consular compact ratified between the United States and Italy on the eighteenth of September, 1878, is as follows:

"Art. 11. Consuls general, consuls, vice-consuls, and consular agents shall have exclusive charge of the internal order on board of the merchant vessels of their nation, and shall alone take cognizance of questions, of whatever kind, that may arise, both at sea and in port, between the captain, officers, and seamen, without exception, and especially of those relating to wages, and the fulfillment of agreements reciprocally made. The courts, or federal, state, or municipal authorities in the United States, and the tribunals or authorities in Italy, shall not, under any pretext, interfere in such questions; but they shall lend aid to consular officers, when the latter shall request it, in order to find out, arrest, and imprison any person belonging to the crew, whom they may think proper to place in custody. These persons shall be arrested at the sole demand of the consular officers, made in writing to the courts, or federal, state, or municipal authorities in the United States, or to the competent court or authority in Italy,—such demands being supported by an official extract from the register of the vessel, and from the crew-list; and they shall be detained during the stay of the vessel in port, at the disposal of the consular officers. They shall be released at the written request of the said officer, and the expenses of the arrest and detention shall be paid by the consular officer."

A protest, signed by the master and the Italian consul at the port of Savannah, was tendered to the clerk, and his attention was therein called to the provisions of the consular compact, and it was therein insisted that he should issue no process in the premises. The master also stated that he appeared before Justice McNAUGHTON, and called his attention to

the consular compact between the government of the United States and the kingdom of Italy. The great names appended thereto, viz., Baron Alberto Blanc and William Maxwell Evarts, had no terrors for his honor Justice McNaughton. He discredited the treaty, and refused to attach any importance to it. But the clerk regarded it as controlling him in his action, and declined to issue the admiralty process of the court. For this refusal it was sought to make him liable.

If the clerk had issued the process sought by the seaman upon the libel filed in this court, he could not, in the opinion of the court, have been regarded as a trespasser. It is true that he is merely a ministerial officer, but there is a standing admiralty rule of this court, having the effect of an order of direction to the clerk, to-wit:

"Admiralty rule No. 1. * * * In all suits *in rem* or *in personam*, attachment or warrant of arrest and monition may issue, without a judge's order, immediately upon the filing of the libel, and the usual stipulation for costs in the clerk's office, except in suits *in personam* requiring bail, where the claim of the libelant amounts to more than five hundred dollars, upon an ascertained demand appearing upon the face of the libel, or is for uncertain or unliquidated damages. In such excepted cases, a judge's order authorizing bail process, and fixing the amount of bail, will be required."

So far as the proceeding under the libel is concerned, the clerk would have been protected by this rule had he issued process. So far as the certificate of the justice of the peace is concerned, the action of the clerk was entirely justifiable. The order directed to an officer of this court from an inferior judicature must depend for its validity upon the power of the court issuing it. The justice of the peace, in the presence of the treaty stipulations, had no power to interfere in this difference between the Italian master and seaman of an Italian vessel. The treaty was paramount law, and should have been respected by him. His sole power, under the statute, related to the wages of the seaman, and that, by the treaty, is clearly remitted to the Italian consul. It was to avoid interference of precisely this character, with the navigators of both nations, that the compact between the kingdom of Italy and the United States was made.

The court has no disposition to lessen the importance of the functions attaching to the office of justice of the peace. They are stated with some elaboration of detail in the case of *Bendheim* v. *Baldwin*, 73 Ga. 594, Mr. Justice BLANDFORD delivering the opinion of the court; and on this subject of state polity the decision of the highest appellate tribunal of the state may be regarded as binding on the courts of the United States; albeit the excellent humor of their court of appeals is scarcely just to the dignified metropolitan justiciary of which Justice McNaughton is a member. It is true, however, that certain functions are occasionally improperly exercised by justices of the peace; as, for example, a justice would improvidently issue a warrant for the arrest and imprisonment of seamen under section 4080 of the Revised Statutes. This power belongs to the judge of a court of record of the United States, or to a commissioner of that court. Besides, it is the duty of all courts,

from motives of justice and reciprocal policy, and for the advancement of commerce, to interfere as little as may be between the master and seamen of foreign vessels trading in ports of the United States. The certificate of the justice in this case, directed to the clerk, was a nullity, and the clerk very properly paid no attention to it.

The only remaining question is, should the clerk have issued process under the libel? It is now settled that the district court of the United States, unless restricted by some treaty stipulations, may, in the exercise of its discretion, assume jurisdiction of a claim for wages against a foreign vessel; and also, where it is provided by treaty stipulation that the consuls, vice-consuls, etc., of a nation, shall have the right, as such, to sit as judges and arbiters upon such differences as may arise between the captains and crews, without the interference of the local authorities, it is held that the district court was not thereby debarred from exercising its authority, in a case where there was no consul, or other such officer, within the territorial jurisdiction of the court. *The Amalia*, 3 Fed. Rep. 652.

It appears, therefore, that, notwithstanding the treaty, there are occasions when the courts should take jurisdiction of suits prosecuted by foreign seamen against foreign vessels. Such cases are, however, of rare occurrence. In the case cited by counsel for the rule, reported in the New York Daily Register of March 13, 1875, decided by Judge JOACHIMSEN in the marine court of New York city, where a suit to recover for assault and battery, committed on board the vessel, was entertained, it was held that the injury complained of was a difference of a nature to disturb the public peace and order in port or on shore, and the treaty vesting jurisdiction in the German consul excepted cases of that character.

The language of the treaty under consideration, to-wit, "consuls, etc., shall alone take cognizance of questions of whatever kind that may arise, both at sea and in port, between the captain, officers, and seamen, without exception, and especially of those relating to wages, and the fulfillment of agreements reciprocally made," suggests the inquiry, do the questions contemplated by this clause of the treaty include such a tort as an unjustifiable and cruel assault by the master upon the seamen on board ship, while in port?—an assault which would indicate settled hostility, and probable repetition. I am inclined to think they do not. Must we not construe the treaty to include questions of a similar character to those enumerated, *ejusdem generis?*

The treaty, it seems, does not indicate a criminal assault upon the seaman, within the territorial jurisdiction of the court, as a matter of exclusive consular jurisdiction; and, in that humane protection which courts have always extended over the seaman, a denial of jurisdiction in the admiralty court is held to be a matter of too serious import to be rested on implication. *Weiberg* v. *The St. Oloff*, 2 Pet. Adm. 433. It is perhaps fortunate, therefore, for the legality of the clerk's action, that the libel filed in this court contained no prayer for the injury occasioned by the assault, and no prayer for a discharge on account of such assault,

and did not otherwise comply with the admiralty rule above cited. Since it contained a prayer for wages only, a matter of which, by virtue of the terms of the treaty, the Italian consul had exclusive jurisdiction, the rule must be discharged.