Argued October 13; modified December 13, 1938

# STATE ex rel. TOLLS *v.* TOLLS et al.

(85 P. (2d) 366, 119 A. L. R. 1370)

*Frank S. Sever* and *Clarence A. Potts,* Deputy District Attorneys, both of Portland (James R. Bain, District Attorney, of Portland, on the brief), for appellant.

*W. O. Sims,* of Portland (Sims & Sims, of Portland, on the brief), for respondents.

LUSK, J.   The question for decision is whether the appellant, A. A. Bailey, county clerk and ex-officio clerk of the Circuit Court for Multnomah county, Oregon, may be punished as for a contempt for refusal to docket a purported judgment of the court and to issue execution thereon.

The case arises out of a suit for divorce brought by the relator, Ida M. Tolls, against the defendant, Roy E. Tolls.   The plaintiff in that case applied to the court for an allowance *pendente lite* to enable her to prosecute the suit and for her support and maintenance, and the court, acting under the authority granted by Sec. 6-913, Oregon Code 1930, on May 27, 1937, made an order directing the defendant to pay to the clerk of the court for the benefit of the plaintiff the sum of $30 to apply upon costs and expenses of the suit, the sum of $25 per month temporary alimony, to be paid on June 1, 1937, and on the first day of each month thereafter until the further order of the court, and the sum of $50, attorneys' fees, payable $25 on June 1, 1937, and $25 on July 1, 1937.

On June 10, 1937, the plaintiff in the divorce suit applied to the court for an order for the entry of final judgment for the sum of $80, which was shown to be delinquent under the order of May 27, 1937, and on June 15th the court made an order reciting such delinquency and reading:

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the court this 14th day of June, 1937, that said accrued payments amounting to $80.00 be and the same is hereby declared to be a final judgment and plaintiff is hereby given judgment against the defendant for said sum of $80.00 and the clerk is ordered to docket the same in the regular judgment lien docket of this court, and

"IT IS FURTHER ORDERED that the issuance of an execution be and is hereby ordered stayed for a period of five days, to-wit: To and including June 19, 1937, and if said judgment be not paid within said period it is ordered that execution may issue thereon."

Thereafter, it having been made to appear to the court by affidavit that the appellant had refused to obey the foregoing order, the court issued a citation requiring him to show cause why he should not be adjudged in contempt. The appellant answered that he had been advised by the district attorney of Multnomah county that the order was not a valid decree, that he had filed the order and entered it in the court journal, but he refused to docket it because to do so might involve him in a damage action for levying execution upon a void order. He disclaimed any intention to be contemptuous. Upon hearing, the appellant was found guilty of contempt of court and ordered to pay a fine of $100, or that he be committed to the county jail should he fail to pay such fine.

Determination of the question for decision requires, first, an examination of the statutes prescribing the duties of the county clerk.

By section 27-2003, Oregon Code 1930, the county clerk is declared to be ex-officio clerk of the circuit court, and is directed to perform all the duties of such clerk. Among those duties are the following: To enter all judgments in the journal (Sec. 2-1501), and immediately after the entry of judgment to docket the same in the judgment docket (Sec. 2-1601). The same section provides: "From the date of docketing a judgment * * * such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which he may afterwards acquire therein." The journal is described as "a book wherein the clerk shall enter the proceedings of the court during term time, and such proceedings in vacation as this Code specially directs" (Sec. 7-703).

By section 27-2008, the clerk is required, among other things: "To file all papers delivered to him for that purpose in any action, suit, or proceeding in the court of which he is clerk"; and "to keep the journal of the proceedings of the court at its terms, and under the direction of the court, to enter its orders, judgments, and decrees".

Further pertinent provisions are the following: Sec. 3-101: "The party in whose favor a judgment is given, which requires the payment of money, the delivery of real or personal property, or either of them, may at any time after the entry thereof have a writ of execution issued for its enforcement, as provided in this chapter." Sec. 3-103: "The writ of execution shall be issued by the clerk and directed to the sheriff." The application

of these provisions is extended to the enforcement of decrees by Sec. 6-302.

■ From the foregoing statutory provisions it appears that, while all orders, judgments and decrees must be entered by the clerk, only a judgment or decree must be docketed in the judgment docket and thereby become a lien upon the real property of the defendant.

As stated, the circuit court's order of May 27, 1937, for the payment by the defendant in the divorce suit of suit money and temporary alimony, was made under the authority of Sec. 6-913, Oregon Code 1930. There is no other statute granting the circuit court any other or different power in a divorce suit with regard to such allowances.

Section 6-913 reads in part as follows:

"After the commencement of a suit, and before a decree therein, the court or judge thereof, may, in its (or his) discretion, provide by order as follows:
"1. That the husband pay, or secure to be paid, to the clerk of the court, such an amount of money as may be necessary to enable the wife to prosecute or defend the suit, as the case may be, and also such an amount of money as may be necessary to support and maintain the wife during the pendency of the suit".

The record shows that the appellant, pursuant to the provisions of Sec. 27-2008, Oregon Code 1930, filed the order of June 15, 1937, which purported to give a final judgment for the amount then delinquent under the previous order of May 27th, and entered it in the journal of the court. What he refused to do was to docket it in the judgment docket so as to make it a lien on real property and entitle the plaintiff in the divorce suit to the issuance of execution.

■ In the opinion of the court the order of June 15, 1937, is not a valid judgment but a mere personal order

and enforcible only by contempt proceedings. The proceedings in a suit for divorce are purely statutory, and the powers which the court exercises are the mere creation of statute. The court is ''exercising a special power conferred upon it by statute, and not according to the course of the common law.'' *Northcut v. Lemery,* 8 Or. 316, 322; *Weber v. Weber,* 16 Or. 163, 164 (17 P. 866). In numerous cases it has been held that the court, in making an allowance under the provisions of Sec. 6-913, is limited strictly by the terms of the statute: *Carlton v. Carlton,* 156 Or. 33, 38 (65 P. (2d) 1417); *Aldrich v. Aldrich,* 129 Or. 111, 113 (276 P. 267); *Billion v. Billion,* 122 Or. 68, 72 (256 P. 389; 256 P. 769); *Steiwer v. Steiwer,* 112 Or. 485, 492 (230 P. 359); *Hengen v. Hengen,* 85 Or. 155, 164 (166 P. 525).

■ The cases also hold that the order is interlocutory and may be made only after the commencement of the suit and before the decree, but that the court may incorporate in the decree a judgment for the amount allowed. *Carlton v. Carlton,* supra; *Aldrich v. Aldrich,* supra; *Billion v. Billion,* supra; *Hengen v. Hengen,* supra. These considerations lead directly to the conclusion that the order is not a judgment or decree. The former is defined as the final determination of the rights of the parties in the action (Sec. 2-901, Oregon Code 1930), while such final determination in a suit in equity is denominated a decree. (*Wright v. Wimberly,* 94 Or. 1 (184 P. 740)). The very language of the statute authorizing the allowance to be made ''by order'' implies a distinction which is emphasized by the decisions holding that the order may be incorporated in the final decree. If, before the decree, the order for allowance of suit money were a judgment no purpose would be served by incorporating the allowance in the decree.

While this court has not directly determined the point, the following language from the opinion of Mr. Justice LORD in *Houston v. Timmerman,* 17 Or. 499, 506 (21 P. 1037; 11 Am. St. Rep. 848; 4 L. R. A. 716), harmonizes with our view of the question:

"But the court cannot affect the title of the real property of the defendant in a divorce proceeding until the point is reached that a decree of divorce is to be rendered. Temporary alimony may be granted *pendente lite,* but the title of the real estate of the defendant remains intact, and cannot be affected during the pendency of the proceeding, but only when the proceeding for a divorce has terminated, and a decree rendered that the marriage is dissolved, and then only by force of the statute."

The authorities elsewhere are to the effect that ordinarily an allowance of temporary alimony, being interlocutory in character, does not constitute a judgment on which execution can be issued nor is it a decree in equity for the payment of money. 1 R.C.L. 907, § 54; *Duss v. Duss,* 92 Fla. 1081 (111 So. 382) ; *Kapp v. Seventh Judicial District Court,* 32 Nev. 264 (107 P. 95) ; Ann. Cas. 1912 D, 177, with note at page 178; *Grove's Appeal,* 68 Pa. St. 143; *Ford v. Ford,* 41 How. Pr. (N. Y.) 169; 102 Am. St. Rep. 703, Note. It is always subject to modification at the discretion of the court, even as to installments which are past due. Keezer, Marriage and Divorce (2d. Ed.), 543, § 710; *Rickerson v. Rickerson,* 203 Ala. 203 (82 So. 453) ; *Moe v. Moe,* 39 Wis. 308.

From the well considered case of *Duss v. Duss,* supra, we quote:

"An order allowing temporary alimony is not in the nature of a final judgment of record, but is merely a temporary or ad interim provision for the support of the wife and children until a final determination of the

suit. Surut v. Surut, 191 App. Div. 570, 181 N. Y. S. 631; Kupfer v. Kupfer, 215 Ill. App. 170. It is held by good authorities in other jurisdictions that such an order is not sufficient to sustain an action of debt for its enforcement, even as to installments past due and unpaid, at least so long as the proceedings in which the order was made remain in fieri and the enforcement of the order within the discretion of the court which made it. Henry v. Henry, 74 W. Va. 563, 82 S. E. 522, L.R.A. 1916B, 1024; Kapp v. Seventh Judicial Dist. Court, 52 Nev. 264, 107 P. 95, Ann. Cas. 1921D, 177; Van Horn v. Van Horn, 48 Wash. 388, 93 P. 670, 125 Am. St. Rep. 940; Hunt v. Monroe, 32 Utah, 428, 91 P. 269, 11 L.R.A. (N.S.) 249. It has also been held in other jurisdictions that an order allowing temporary alimony, unlike a decree for permanent alimony, does not create a lien on the husband's property during the pendency of the suit (Houston v. Timmerman, 17 Or. 499, 21 P. 1037, 4 L. R. A. 716, 11 Am. St. Rep. 848); nor does it constitute a decree in equity for the payment of money; nor a judgment on which execution can issue (1 R.C.L. 907); nor an absolute debt within the meaning of the federal Bankruptcy Act. Audubon v. Shufeldt, 181 U. S. 575, 21 S. Ct. 735, 45 L. Ed. 1009; Wetmore v. Markoe, 196 U. S. 68, 25 S. Ct. 172, 49 L. Ed. 390, 2 Ann. Cas. 265. This court has held that alimony is not a debt for which imprisonment is forbidden by the Constitution. Bronk v. State, 43 Fla. 461, 31 So. 248, 99 Am. St. Rep. 119. See, also, Tolman v. Leonard, 6 App. D. C. 224; Ex parte Perkins, 18 Cal. 60; Barclay v. Barclay, 184 Ill. 375, 56 N. E. 636, 51 L.R.A. 351. Where a husband seeks relief from a former interlocutory order allowing temporary alimony, the fact that he is in default in, or resists, payment of so much thereof as has accrued and is past due does not affect the power of the court to modify its former order, nor does such fact necessarily require the court to refuse a reduction otherwise proper (Craig v. Craig, 163 Ill. 176, 45 N. E. 153; Kingman v. Kingman, 200 Ill. App. 338; Barclay v. Barclay, 184 Ill. 375, 56 N. E. 636, 51 L.R.A. 351), but the circumstances just mentioned may justify a refusal of the reduction

(Rigney v. Rigney, 62 N. J. Eq. 8, 49 A. 460; Cole v. Cole, 142 Ill. 19, 31 N. E. 109, 19 L.R.A. 811, 34 Am. St. Rep. 56). The Court of Appeals of the District of Columbia has held:

" 'The allowance of alimony is not in the nature of an absolute debt. It is not unconditional and unchangeable. It may be changed in amount, even when in arrears, upon good cause shown to the court having jurisdiction.' Tolman v. Leonard, 6 App. D. C. 224."

██ The order for the payment of suit money and counsel fees is on the same footing. These allowances are in the nature of temporary alimony and governed by the same rules: *Barnes v. Barnes,* 59 Iowa 456 (13 N. W. 441); *Anderson v. Steger,* 173 Ill. 112 (50 N. E. 665); *Farrell v. Betts,* 16 Ala. App. 668 (81 So. 188); 1 R.C.L. 910, § 57. The order in this regard is likewise subject to the supervisory control of the court and may be modified or altered or vacated at the court's discretion (Keezer, *supra,* 565, § 731), and it does not constitute a judgment or decree in equity for the payment of money on which an execution may issue, nor does it create a lien on the property of the husband. 1 R.C.L. 919, § 68; *Grove's Appeal,* supra.

Section 6-915, Oregon Code 1930, relates to permanent alimony granted in the final decree. The history of this section, and the decisions construing it, bear significantly on the present question. Prior to 1921, as Sec. 514, Or. L., it read as follows:

"Power of Court to Modify Decree. At any time after a decree is given, the court or judge thereof, upon the motion of either party, shall have power to set aside, alter, or modify so much of the decree as may provide for the appointment of trustees for the care and custody of the minor children, or the nurture and education thereof, or the maintenance of either party to the suit."

In 1921 the legislature by Chapter 114, Laws of 1921, amended the section by adding the following proviso:

"* * * provided, however, that such decree shall be a final judgment as to any installments or payments of money provided for therein which have accrued up to the time either party shall move the court to set aside, alter or modify the same; and provided further, that the court shall not have the power to set aside, alter or modify such decree or any portion thereof which may provide for the payments of money, either for the nurture or education of minor children or the maintenance of either party to the suit, which have accrued prior to the filing of such motion."

Under the statute, as it stood before the 1921 amendment, the court held in *Mansfield v. Hill,* 56 Or. 400 (107 P. 471; 108 P. 1007), that a divorce decree for future monthly payments by the defendant for the support of his children, being for an indefinite time and amount not accrued and subject to the further order of the court, was not a definite liability or a judgment for a specific sum which might become a lien upon his property, although a provision in the same decree for attorney's fees and costs was held to constitute a judgment which became a lien from the date it was docketed.

In *Forbes v. Jennings,* 124 Or. 497 (264 P. 856), the court interpreted the statute as it now reads, in the light of the decision in *Mansfield v. Hill,* supra, and referring to that case, said:

"* * * in this case it was held that the uncertainty in the amount of the decree and the fact that it was made subject to the further order of the court prevented its being a general lien; but constituted a continuing liability, overdue installments of which constituted a debt or claim against the estate to be pre-

sented to the executor of the estate to be paid in due course of administration.'' 124 Or. 502.

The court said at page 501 that under Sec. 514, Or. L., as it existed before 1921:

''* * * this court had consistently held that an order to pay alimony or sums for maintenance was merely personal and did not create a lien upon the land of the delinquent, and that it merely created an obligation in the nature of a debt, which, in the absence of an express order to that effect, did not bind the land.''

It was held that the amendment of 1921 was enacted with the view of providing that such allowances in divorce cases should be raised from the grade of mere personal orders to the dignity of judgments, and therefore that a provision in a decree of divorce for installment payments for the care and maintenance of a minor child was a final judgment and a lien on the defendant's real estate as to any installments accrued and unpaid.

The section was again considered in *Mason v. Mason*, 148 Or. 34 (34 P. (2d) 328), where the court held, construing the statute, as amended, that a decree for the payment of alimony in installments did not become a final judgment, nor a lien against the plaintiff's real property, although docketed, because no application had been made to the court to set aside, alter or modify the decree. Such a decree, it was held, was not entitled to be docketed. In the course of the opinion the court said, discussing the state of the law before 1921: ''The decree was merely a personal decree and one which could not be enforced by execution but which could only be enforced by attachment of the plaintiff's person in a contempt proceeding.'' (Page 41).

Thus, before the 1921 amendment of the statute authorizing the court to set aside, alter or modify a

final decree granting alimony, such a decree providing for installment payments was not a lien against real property either as to accrued or unaccrued amounts and was not entitled to be docketed or to the issuance of execution for its enforcement; and it needed an act of the legislature to make a decree of that character a final judgment as to accrued payments. For a much stronger reason that must also be the rule respecting a mere interlocutory order for the payment of temporary alimony in installments, and of suit money and counsel fees. Every provision of that order, as we have seen, remained under the supervisory control of the court, and liable to be set aside, altered or modified under a variety of circumstances that might arise and move the court to act; and it would be incongruous to say that an order subject to such possible vicissitudes is a judgment.

■ The question yet remains, notwithstanding the invalidity of the judgment, whether the clerk was justified in refusing to obey the order of the court to docket it. Appellant's counsel relies on the rule, which no one questions, that a man may not be held in contempt for refusing to comply with an order which the court had no authority to make. See *State v. La Follette,* 100 Or. 1, 7 (196 P. 412); *Ex parte Fisk,* 113 U. S. 713, 718 (28 L. ed. 1117; 5 S. Ct. 724). From the invalidity of the judgment they argue that the court had no authority to order the clerk to docket it. If that be the law it follows, of course, that the clerk of the court may sit in judgment on the acts of the court to determine whether they are lawful or not, and govern himself accordingly. That is a proposition, the mere statement of which is sufficient to make one at least cautious about accepting it.

There is not a great deal of authority directly on the point—perhaps, because of the well known traits of character of clerks of the court. Generally speaking, they are amenable gentlemen who avoid bringing themselves into collision with their superiors. However, sporadic instances of such unfortunate controversies have occurred and are recorded in the books. Thus, in *Territory v. Clancy,* 7 N. M. 580 (37 P. 1108), the clerk of the Supreme Court of New Mexico was adjudged in contempt, sentenced to imprisonment, and removed from his office for refusing to obey a command of one of the justices of the court. And in the case of *Feol v. Salomoni,* 29 Fed. 534, which counsel for the appellant have called to our attention, the court dealt with a conflict between a justice of the peace and a clerk of the District Court of the United States. It appears that a seaman on an Italian bark, lying at the wharf in the harbor of Savannah, Georgia, made an affidavit before McNaughton, a justice of the peace, that the master of the bark had assaulted him. The justice issued a summons to the master and owner of the vessel commanding them to appear before him and show cause why process of attachment should not issue. A copy of the summons was served on the master by the constable of Justice McNaughton's court, but as the opinion of District Judge Speer states, ''the master treated the summons and the justice's court with great indifference, and, indeed, refused altogether to appear.'' Thereupon the justice, acting under the supposed authority of the federal statute, issued a certificate to the clerk of the United States District Court reciting what had occurred, and stating that there was sufficient cause of complaint whereon to found admiralty process against the vessel. This statute, however, had been super-

seded as far as the particular case was concerned, by a consular compact between the United States and Italy by which cognizance of questions that might arise between the captain, officers and seamen of Italian vessels, both at sea and in port, was given over to the exclusive charge of Italian consuls. The clerk of the United States District Court therefore refused to issue process on the certificate of the justice of the peace, and a rule was sought against him. The opinion states that the master of the vessel appeared before Justice McNaughton and called attention to the consular compact, but that ''the great names appended thereto, viz., Baron Alberto Blanc and William Maxwell Evarts, had no terrors for his honor Justice McNaughton. He discredited the treaty, and refused to attach any importance to it.'' The court held that the certificate of the justice directed to the clerk was a nullity and the clerk very properly paid no attention to it. This case was cited by the appellant as an authority supporting his position, but we think it is not.

The appellant has also directed our attention to the following statement from 23 C. J. 319, § 30: ''Where the judgment is void, the court cannot compel an officer to issue an execution to the creditor.'' In support of the text the case of *State v. Thompson,* 118 Tenn. 571 (102 S. W. 349; 20 L.R.A. (N.S.) 1), is cited. The facts there were that in an action on an insurance policy the circuit court entered a default judgment without the intervention of a jury. The judgment was held void because the amount of the indebtedness was not liquidated, and could not be ascertained by simple calculation from the papers, and, therefore, a jury should have been called to assess the amount. At a subsequent term of the court the judgment was set aside. A writ

of mandamus was sought to compel the clerk to issue execution on the void judgment which had been set aside. The relator contended, among other things, that the order setting aside the judgment was void because made at a subsequent term of court. For a number of reasons it was held that the plaintiff was not entitled to the writ, and among others the following:

"In addition to the foregoing, it is clear the clerk did not wrongfully refuse to issue the execution. He could act only in obedience to his records. In the face of a minute entry setting aside the judgment on which the petitioner asked him to issue an execution, he could not issue such execution. It was not for him to pass judgment on the act of the circuit judge in setting aside the judgment. He was only a ministerial officer. State v. Miller, 1 Lea, 596, 606, 607; State v. Wilbur, 101 Tenn., 211, 220, 47 S. W., 411; 2 Spelling, Inj. & Extr. Rem., secs. 1378, 1418."

This case would seem to be an authority against rather than in favor of the appellant.

■ It is not disputed that the clerk is a ministerial officer, "the mere arm of the court", as it is put in *Watson v. Odell,* 53 Utah 96, 98 (176 P. 619). See *Hodgdon v. Goodspeed,* 60 Or. 1 (118 P. 167); 34 C. J. 59, § 187. In the performance of his duties as the ministerial officer of the court he is subject to the control of the court. (11 C. J. 884, § 64). In *State v. Bowen,* 41 Mo. 217, 220, it is said:

"The office of the clerk of the County Court is essentially ministerial in its character. So far as the entry of the orders of the court are concerned, or the performance of any other act or thing which may be legally and properly required of him by the court, he is without discretion; he has no power to judge of the matter to be done, and must obey the mandates of the tribunal whose officer and servant he is."

*Dews v. Riley*, 11 C.B.R. 434, was an action of trespass and false imprisonment against the clerk of the Whitechapel County Court of Middlesex, who had acted under authority of a "bad order". From the abstract of the argument which prefaces the opinion it appears that one of the justices said during the argument of counsel for the clerk: "The clerk would be liable in trespass for issuing a warrant, where there was no judgment". And counsel answered: "Clearly. But, suppose the judge makes an order that is void,—what is the clerk to do? Has he any authority to criticise the acts of his superior?" It was on the basis of a negative answer to this question that the case was decided and the clerk exonerated, the court saying:

"By the 102nd section of the county-court act, 'where any order of committal shall have been made as aforesaid, the clerk of the court shall issue, under the seal of the court, a warrant of commitment,' etc. It is said that the words 'as aforesaid,' by reference to the preceding sections, require that the order should be in compliance with the terms of the act; and that this section is not obligatory upon the clerk where the order is bad and cannot be sustained.

"This is not, in our opinion, the correct construction of the act. It would throw upon the clerk the duty of reviewing the decision of the judge,—his superior officer. The clerk is a mere ministerial officer, to carry into effect the order of the judge, and cannot be liable in trespass for the mere performance of the duty cast upon him by the express language of the act of parliament."

In the somewhat similar case of *Graham v. Smart,* 18 U.C.Q.B. 482, 485, there is a like ruling. We quote from the opinion:

"Mr. Ponton, the clerk in Hastings, did nothing more than execute a duty which the law threw upon him.

His superior, the judge of the court in Hastings, had upon the evidence that appeared before him given judgment for the plaintiff, and in a case that was undefended. He was bound to assume that the judge had rightly decided the case, and could not set his judgment above that of his superior, and refuse to act upon the judgment.

"The case of Dews v. Riley (11 C. B. 434) is in point, if an authority could be wanted, and the principle seems to be universally understood, for no one ever heard of the clerk of a court, or a justice's clerk being sued as a trespasser for any act done by him in a ministerial capacity, in carrying out the order of his superior. It is not his business to question the soundness of the decision upon which he is directed to act in the ordinary course of his duty."

■ We have examined all the cases which the industry of counsel for appellant has discovered, but will not further extend this opinion by discussing them. None of them seems to us to be in point. They do not deal with clerks of the court and the peculiar nature of their duties arising out of the relationship which they sustain to the court. We believe that an intolerable situation would be created were it to be held that the clerk could question the act of the court when acting judicially. A due regard for the dignity and authority of the office of judge and considerations of expediency and public policy demand that no such doctrine should be announced, and what authority we have been able to find on the subject supports this view.

■ In this case the order which the court made was in terms a judgment, and it was the clerk's ministerial duty to docket it instead of taking legal advice as to its validity as a judgment and then refusing to comply with the court's direction. Had he done so he would have been fully protected by the order of the court,

under which he acted, against damage claims: 11 C. J. 894, § 91c.

■ As stated, the appellant, in his answer to the order to show cause, disclaimed any intentional contempt. We are impressed with the sincerity of this disclaimer. In fact, counsel on both sides at the argument indicated rather definitely that the clerk's action was taken as a method of testing the question of the validity of the alleged judgment. Better ways of making a test case than that of courting the penalties of contempt of court might be suggested. But under all the circumstances we think that the penalty imposed by the circuit judge was too severe. In that respect the judgment of the circuit court will be modified by imposing a fine of $10, and with that modification the judgment is affirmed.

BAILEY, RAND and BELT, JJ., concur.