Argued September 10; affirmed October 20; rehearing denied
November 17, 1942

# SKULASON *v.* PRATT

(130 P. (2d) 17)

Before Kelly, Chief Justice, and Belt, Bailey, Lusk, Rand, Rossman and Brand, Associate Justices.

*Wilber Henderson*, of Portland (Platt, Henderson, Warner & Cram, of Portland, on the brief), for appellant.

*Frank S. Sever*, Deputy District Attorney, of Portland (James R. Bain, District Attorney, of Portland, on the brief), for respondents.

BELT, J. This is an action to recover damages resulting from the alleged negligence of the defendant sheriff in serving and executing a writ of assistance issued for the purpose of ousting a judgment debtor from possession of a dwelling house and lot in the city of Portland. The corporation was made defendant by reason of its being surety on the official bond of the sheriff. The cause was submitted to the trial court, without the intervention of a jury, and a judgment rendered in favor of defendants.

The action arose out of the following facts: On the 9th day of November, 1938, a judgment was rendered in a suit to foreclose certain mechanics'

liens wherein the Drake Lumber and Fuel Co., a corporation, was plaintiff. Eva V. Kelso, The First National Bank of Portland, B. G. Skulason and other lienholders were named as defendants. It was decreed therein that the Drake Lumber and Fuel Co. had a first lien, aggregating in excess of $4,000, on the property which was valued at approximately $10,000. It was also decreed that the mortgage lien of the bank, amounting to $1,500, was second in priority and that the lien of B. G. Skulason, plaintiff herein, amounting to $8,114.20 for money advanced to Eva V. Kelso to cover cost of construction of dwelling house, was third in priority. The property was sold upon execution on January 9th, 1939, to satisfy the judgments rendered in favor of the various lienholders in order of their priority as above stated. The Drake Lumber and Fuel Co. was purchaser at the sale and a sheriff's certificate of sale was duly issued to it. The sale was confirmed on January 23, 1939. After entry of the decree and prior to the execution sale, it was agreed between the plaintiff herein, B. G. Skulason, and the various lienholders above named that the Drake Lumber and Fuel Co. would bid in the property for and on behalf of all lien claimants and that, after sale, the plaintiff herein would pay the various lien claimants the amounts of their respective judgments, whereupon the sheriff's certificate of sale would be assigned to Skulason.

It appears that Mr. Skulason did not possess sufficient funds to consummate the deal immediately so money was borrowed by him from L. Grace Vial for such purpose, it being understood between them that the certificate should be taken in her name as security for the loan. Pursuant to such understanding and agreement, Skulason paid off the lien claimants in full and

the certificate of sale was assigned by the Drake Lumber and Fuel Co. to L. Grace Vial on February 27, 1939. Thereafter, Skulason paid the amount due L. Grace Vial and on the 27th day of February, 1940, she assigned the certificate of sale to the Skulason Finance Company, a corporation, in which Skulason, the plaintiff herein, was the sole owner of the stock. A declaration of trust was introduced in evidence showing that the Skulason Finance Company held the certificate of sale in trust for the plaintiff herein and that he was the owner thereof.

Eva Kelso, the judgment debtor, refused to surrender possession of the property after execution sale, notwithstanding various attempts made by Mr. Arthur Lewis, attorney for Drake Lumber and Fuel Co. and B. G. Skulason, to persuade her to do so. After confirmation of sale, Drake Lumber and Fuel Co. petitioned the court for a writ of assistance to secure possession of the property. The writ was duly issued by the clerk at direction of the Honorable James P. Stapleton, circuit judge for Multnomah county, and, on the same day, placed in the hands of the defendant sheriff for service and execution.

Notwithstanding the writ commanded the sheriff "immediately after receiving it" to eject the judgment debtor from the premises and to place the Drake Lumber and Fuel Co., "or its assigns", in possession, the sheriff, through his chief deputy, wrote, on the day the writ was received by him, the following letter to the judgment debtor:

"Dear Madam:

"You will please note the attached Writ of Assistance and the conditions contained therein.

"The Sheriff is commanded according to this writ to place the plaintiff in possession immediately.

However, as a matter of convenience to this office we are advancing the date to February 8th, on which day we will expect you to have vacated the premises. In other words we will expect to deliver to the plaintiff possession of the premises on Thursday morning February 9th, 1939.

"There is no alternative in this court order."

The writ was not served and executed until the morning of February 16th, 1939. On the evening prior thereto, the judgment debtor took an axe and chopped up the hardwood floors and window casings and otherwise damaged the property in the agreed sum of $1,034.94. The following day she was committed to the hospital for the insane. When the sheriff finally secured possession, the keys were turned over to Mr. Skulason and a bill was rendered to him by the sheriff covering costs in the execution of the writ. Mr. Skulason thereafter exercised dominion and control over the property.

On June 15, 1939, the Honorable John P. Winter, circuit judge for Multnomah county, before whom the suit of *Drake Lumber and Fuel Co. v. Kelso et al.* was tried, made a nunc pro tunc order reciting that application was made by the judgment debtor on February 8, 1939, for stay of execution of the writ and that such stay was granted to and including February 15, 1939. Subsequently the nunc pro tunc order was set aside and vacated for the reason that it was made after expiration of term time.

Relative to the delay in the execution of the writ, the trial court entered the following findings of fact:

"That the attorney for the purchaser at execution sale acquiesced in the failure of the sheriff to execute said writ until the 8th day of February, 1939, and that on said 8th day of February, 1939,

the Hon. John P. Winter, judge of the above entitled court, being the same judge before whom the case of Drake Lumber and Fuel Company v. Eva V. Kelso, et al., was tried, by oral order directed the sheriff of said county, the defendant herein, to withhold execution of said writ until after the 15th day of February, 1939.''

Was there any legal justification for the delay in the execution of the writ? In the consideration of this question we shall direct attention first to the period of time wherein the attorney for the purchaser at the execution sale is alleged to have ''acquiesced'' in the stay of execution until February 8, 1939; secondly, as to the stay of execution from February 8 to February 16, 1939.

■ Eliminating any question of justification for delay in execution of the writ arising from the directions of the party procuring the same, or its attorney, or by reason of any order of the court in reference to it, it is clear that the sheriff, as a ministerial officer, was obliged to act with reasonable celerity: 24 R. C. L. 925; 57 C. J. 1024; Anderson on Sheriffs, § 463. As stated in *Habersham v. Sears*, 11 Or. 431, 5 P. 208, 50 Am. Rep. 481:

''The purpose of a writ of execution is, to authorize the officer to whom it is directed and delivered, to seize and hold the property of the debtor for the satisfaction of the amount ordered to be made by such writ. And, in the absence of instructions, it is his duty to proceed with reasonable celerity and promptness to execute it in accordance with its mandates.''

■ The writ, being regular upon its face, is a complete justification for its execution: § 93-952, O. C. L. A. It is not the business of the sheriff to determine whether

the writ should have been issued or not, as that matter rests within the sound legal discretion of the court. Neither is it proper for the officer in an effort to "temper the wind to the shorn lamb" to modify the writ as to the time of execution. Indeed, it is statutory (§ 93-935 O. C. L. A.) that:

> "An officer to whom any process, order, or paper is delivered shall execute or serve it according to its command or direction, or as required by this Compilation or other statute, and must make a written return of the execution or service thereof."

■ It is the sheriff's duty to act promptly and in accordance with the mandate of the court. The court has control over its process and if there is good reason for stay of execution the judgment debtor should petition the court for relief and not appeal to a ministerial officer whose duty it is to execute the writ. The letter above quoted is a clear departure from official duty, regardless of the good motives which prompted it and, in effect, purports to modify an order of the court.

■ It is well established that a sheriff, upon receipt of a writ of assistance, must proceed with reasonable celerity to execute the same and if failure so to do results in damage to the beneficiary of the writ, liability attaches: *Chapman v. Thornburgh*, 17 Cal. 87, 76 Am. Dec. 571; *Pappe v. Law*, 169 Okl. 15, 35 P. (2d) 941, 95 A. L. R. 939; *Elmore v. Hill*, 51 Wis. 365, 8 N. W. 240; *Tubiola v. Baker*, 233 N. Y. S. 373, 225 App. Div. 420; *Habersham v. Sears*, supra.

While *Chapman v. Thornburgh*, supra, was decided on a demurrer to the complaint—and no justification for delay was involved—the decision is instructive, as the facts alleged are closely analogous to those in the

instant case. The plaintiff in that case was purchaser at a mortgage foreclosure sale. Mortgagors refused to surrender possession. A writ of assistance was issued on September 4, 1857, and put into the hands of the sheriff for service the next day. Plaintiff and sheriff visited the property on September 5, 1857, but judgment debtor was not ousted from possession. The writ was not executed until September 7. Between the 5th and the 7th of September, the mortgagors damaged the property. Action was brought against the sheriff for damages based upon failure to execute the process. The court said:

"If the defendant had properly discharged his duty, no opportunity for the commission of these acts would have been afforded, and we think that the effect of his conduct was to place him in a position of responsibility for the safety and security of the property. If the process had related to personal property instead of real estate, there is no doubt that the course which he pursued would have rendered him liable for the value of the property, and we do not see why the same principle which would have determined his liability in that case, is not equally applicable in this. The parties who committed the injury were the parties from whom the possession was to be taken, and it was the fault of the defendant that they were not removed, and the plaintiff placed in a position to protect the property against their acts. It was this fault that enabled these parties to commit the injury, and we are not aware that any principle of law is violated in making the defendant responsible for the consequence of a wilful dereliction of duty, however remote or unexpected these consequences may have been. We do not suppose that the defendant, when he took the responsibility of postponing the execution of the writ, anticipated danger to the property; but his action in the matter was entirely voluntary,

and he cannot escape liability on the plea that he was ignorant of the existence of the danger. If such a plea were admissible under the circumstances of this case, we do not see that the remote or consequential results of a wrong, however wilful, could ever be redressed. It must be borne in mind that the defendant was an officer called upon to discharge a duty enjoined by law, and that possession of the property could only be obtained through him. He is presumed to have known what his duty was, and to have acted in wilful violation of it, and there is nothing unjust or illegal in holding him for the damages to which the plaintiff has been subjected.''

Having adverted to the above general legal principles, we go to the precise question as to whether the sheriff was justified in the delay of execution of the writ by reason of any ''acquiescence'' of Mr. Lewis, attorney for the Drake Lumber and Fuel Company, purchaser at sale. There is no basis in the evidence for any finding of acquiescence in view of § 93-951 O. C. L. A., which provides:

''No direction or authority by a party or his attorney to a Sheriff or his officer, in respect to the execution of process or the return thereof, or any act or omission relating thereto, can be shown to discharge or excuse the sheriff from a liability for neglect or misconduct, unless it be contained in a writing signed by the party to be charged or affected thereby or his attorney.''

■ The above statute was enacted in 1862 and is, without doubt, a wholesome provision affording not only protection to a sheriff but to a party litigant as well. It is a simple matter to require a party or his attorney to sign a writing concerning any directions about the execution of process. Compliance with the

statute will avoid any misunderstanding with regard to what should or should not be done in the execution of process. There is no claim there that Mr. Lewis, attorney for plaintiff in the foreclosure proceedings, gave any directions, either oral or written, to stay execution of the writ. The only fair inference from the evidence is that he was very much perturbed because of the failure of the deputy sheriff to act. At any rate, the above statute conclusively answers adversely the contention of defendants that delay was excused by the "acquiescence" of the attorney above mentioned.

California and Idaho have statutes almost identical with ours, requiring that, in order to relieve the sheriff from liability, any direction by a party or his attorney concerning the service of process must be reduced to writing: Pol. Code of Cal., 1937, § 4166; Idaho C. A. § 30-1711. The Supreme Court of California, in *Sanborn v. Boring*, 12 Cal. 539, in construing its statute, said:

> "The statute is express, that no direction or authority by a party or his attorney to a Sheriff in respect to the execution of process, or the return thereof, or to any act in relation thereto, shall be available to discharge or excuse the Sheriff for a liability for neglect or misconduct unless it be contained in writing, * * *"

Also see 223 Cal. Jur. § 18.

The Supreme Court of Idaho, in *Applebaum v. Stanton*, 47 Idaho 395, 276 P. 47, an action against a sheriff and his surety for failure of the sheriff to levy upon and sell the tax property, held instructions erroneous pertaining to directions given by an attaching creditor to the sheriff, in that full force and effect were not given to Idaho C. A. § 30-1711.

■ We come now to the second question, viz.: Was there a breach of official duty by the sheriff subsequent to February 8 and, if so, was such negligence the proximate cause of the injury to the property? More precisely: Was the sheriff justified in delaying execution of process subsequent to February 8 by reason of the oral directions of the trial judge to do so? It would, indeed, be a harsh rule to hold that the sheriff, as a ministerial officer, was obliged to see that such oral directions were reduced to a formal order and entered on the journal of the court. Would plaintiff have the sheriff question the authority of the trial judge to stay execution of the process? A sheriff would be a brave officer who would say, "Judge, I do not think you are authorized in law to direct me to stay execution of the writ until February 16."

We are not unmindful that a court speaks through its records. However, we are concerned not with the validity of the nunc pro tunc order staying execution of the process but rather with the question as to whether the sheriff had the right to rely upon the directions of the trial court in reference to the writ. It is believed that any sheriff of ordinary intelligence would have complied with such directions. The comparatively recent case of *State ex rel. v. Tolls*, 160 Or. 317, 85 P. (2d) 366, 119 A. L. R. 1370, is closely analogous and is in keeping with the conclusion reached herein that the defendant sheriff was not negligent in failing to execute the writ subsequent to February 8.

It will be recalled that the damage occurred on the evening of February 15. Was the negligence of the sheriff prior to February 8 the proximate cause thereof? We think not. The breach of duty ceased on February 8. The intervening act of the trial judge

afforded the opportunity for the judgment debtor to injure the property. It was not the act of the sheriff. If the damage had occurred prior to February 8, a different question would be presented. What if the court had recalled the writ on February 8? Would it still be contended that the sheriff was responsible for an act of the judgment debtor subsequent thereto? The cases are legion involving questions of proximate cause, but none which we have been able to find—and certainly none which have been cited—are based upon a similar factual situation.

There are other interesting and difficult questions presented, but the conclusion reached relative to proximate cause makes it unnecessary to consider them.

The judgment is affirmed.

KELLY, C. J., concurs in the result.