## SOPHIA NOVOTNY v. MARTIN NOVOTNY.[1]

June 30, 1922.

No. 22,622.

**Custody of child—modification of decree in divorce denied.**

1. Trial courts are vested with broad powers in determining applications for the modification of judgments of divorce with respect to the custody of the minor children of the parties. Upon the facts stated in the opinion, this court is not warranted in interfering with the action of the trial court in denying such an application.

**Attorney's fee allowed wife.**

2. When the divorced father of a minor child makes such an application and it is denied and he appeals to this court, his former wife may be allowed a reasonable sum for attorney's fees and expenses incurred on the appeal.

Martin Novotny petitioned the district court for Le Sueur county for an order amending its judgment and decree by striking out all that part decreeing that the care and custody of his minor child, Aravilla Novotny, be given to plaintiff and in lieu thereof giving her care and custody to petitioner. From an order, Tifft, J., denying the motion to amend the judgment in relation to the custody of the child, defendant appealed. Affirmed.

*Moonan & Moonan,* for appellant.

*Thomas Hessian,* for respondent.

LEES, C.

Appeal from an order denying defendant's application for a modification of a judgment of divorce insofar as it related to the custody of his minor child.

The parties to this action were married in January, 1915, and lived together as husband and wife until August, 1916, when plaintiff returned to the home of her mother in Montgomery in this state and brought an action for divorce, charging defendant with cruelty.

[1]Reported in 189 N. W. 258.

They had one child, a daughter named Aravilla, who was born February 23, 1916. The action was tried in June, 1917, and plaintiff was granted a divorce, defendant not opposing it, as we are informed by the briefs. Subject to the right of the defendant to visit the child at reasonable times on one day of each week and to take her to visit his relatives, returning her on the same day, the custody of the child was awarded to plaintiff. This provision seems to have been inserted in the judgment with the consent of the defendant. After leaving the defendant, plaintiff worked in a store in Montgomery for about three years and lived with her mother, Mrs. Tuma, who is a widow 58 years of age and a native of Bohemia, speaking little English. Later on plaintiff was employed for a time at Minneapolis, and still later at Redfield, South Dakota, but spent a portion of each year at her mother's home. Aravilla has been largely under her grandmother's care. She had not been sent to school at the time of the hearing of the application nor taught to speak English, except as she learned it from other children. She is a frail child who needs a woman's care.

Defendant is a farmer living about 2½ miles from Montgomery. He has a married sister living on a farm adjoining his own. She has no children who live at home and is willing to take Aravilla and care for her. Defendant wishes to have the custody of the child transferred to him, and, if it is, he proposes to place her in his sister's home. He is possessed of sufficient means to enable him to provide for the suitable maintenance and education of his child. The home of his sister and that of Mrs. Tuma are conceded to be comfortable and the child's environment would be as good in one as in the other.

The application was made on the ground that plaintiff had abandoned Aravilla and left her wholly in Mrs. Tuma's care, that her education was neglected, and that defendant was in a better position to provide for her care and education than plaintiff or her mother. The application was heard in September, 1920, the child being then about 4 years and 7 months old. It was shown that defendant had not attempted to exercise his privilege of visiting Aravilla as pro-

vided by the judgment and that she did not know him. His excuse for failing to visit her was that his mother-in-law was hostile and he wanted to avoid trouble with her. There is little dispute about the facts, and the principles by which the courts are guided in determining controversies such as this have been recently stated and need not be repeated. Spratt v. Spratt, 151 Minn. 458, 187 N. W. 227.

To transfer Aravilla from the home with which she is familiar to new surroundings and to the custody of persons who are strangers to her would not promote her welfare. The fact that she has not been taught English is of no great weight, for she is still so young that she will learn the language quickly enough when she goes to the public schools, where her mother proposes to send her now that she is old enough to go. The fact that she does not know her father would have more weight, if he had sought to cultivate her acquaintance more earnestly in the past or if his own conduct had not been such as to constrain the trial court to grant his wife's prayer for a divorce and for the custody of the child. In the course of the hearing the trial judge remarked that defendant should have the right to know his child and the child should be allowed to know its father and the question is: How shall it be done? Unless the judgment is modified, it can only be done in conformity with the provisions thereof, and defendant earnestly insists that they are unreasonable because he would have anything but a cordial reception if he made a call at Mrs. Tuma's house to visit the child. Unless there are valid reasons for depriving a divorced parent of the right to visit his child, a judgment should secure to him reasonable opportunities to meet the child in surroundings where he will not be embarrassed by the presence of hostile members of the family of his former wife.

The courts have always found it a difficult matter to harmonize the wishes of divorced parents with respect to their future relations toward their children. In a general way the problem is one to be solved by the trial courts. In solving it, they are invested with a broad discretion, this court being reluctant to interfere in the absence of a showing that there has been arbitrary action, or, as more commonly stated, an abuse of discretion. Presumably there were good and sufficient reasons for the action of the trial court in the

instant case. Upon the record before us, we cannot say that there was an unwarranted exercise of its powers.

The plaintiff has applied for an allowance of $150 for attorney's fees and the expense incurred for printing her brief. The amount is not questioned if she is entitled to any allowance at all. Under the rules laid down in Spratt v. Spratt, supra, she is entitled to such allowance. One hundred and fifty dollars as her attorney's fees and the cost of printing her brief are hereby allowed, to be paid by defendant on the entry of judgment herein.

Order affirmed.