## Esther M. Thomas, Appellant, v. Arthur B. Thomas, Appellee.

1. CONTEMPT—*sufficiency of proof of violation of order for custody of child.* In proceedings following the granting of a divorce and the awarding of custody of a minor child to the wife, in which the wife was cited for contempt in violating the order of the court relative to giving the father opportunity to visit the child, held, that, under the evidence, the trial court was not warranted in finding the wife guilty of wilfully violating the order.

2. DIVORCE—*what facts suffice to change order for custody of child.* A decree fixing the custody of a child is final on the conditions then existing and should not be changed afterwards unless on altered conditions or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child.

3. DIVORCE—*violation of decree for visiting privilege not ground to change custody of child.* Even if the mother of a child were in contempt of court for disobedience of an order of the court relative to permitting the father to visit it after divorce, it was error for the court, by way of punishment of the mother, to change the custody to the father without a showing that conditions had changed so that the best interests of the child required such change.

4. DIVORCE—*power to compel father to support child in other's custody.* The law makes it the duty of a father to support his minor child even though its custody is awarded to the mother upon divorce of the parents, and section 18 of the Divorce Act, Cahill's Ill. St. ch. 40, ¶ 19, gives the court ample power and authority to compel performance of that duty.

5. DIVORCE—*allowance pending appeal when proper.* If the husband appeals from a decree of divorce the court may make an allowance for solicitor's fees and the expense of defending the decree on appeal under section 15 of the Divorce Act, Cahill's Ill. St. ch. 40, ¶ 16, but when the wife appeals the court is without authority to make such an allowance.

6. DIVORCE—*proper allowance for service on trial and appeal.* In view of the provisions of section 15 of the Divorce Act, Cahill's Ill. St. ch. 40, ¶ 16, the court should have allowed the wife a reasonable solicitor's fee for services in the trial court and for her actual expenses in attending court in a proceeding charging her with contempt in not obeying an order of the court relative to permitting the father to visit a minor child awarded to the custody of the mother.

Appeal by plaintiff from the City Court of Alton; the Hon. L. D. YAGER, Judge, presiding. Heard in this court at the March term, 1924. Reversed and remanded with directions. Opinion filed July 7, 1924.

JOHN J. SONSTEBY and WILLIAM WILSON, for appellant; VARIAN B. ADAMS, of counsel.

GILSON BROWN, for appellee.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Appellant procured a divorce on June 25, 1921, for the fault of appellee and was awarded the custody of their son who was then four years old, but appellee was allowed to visit him at reasonable times and to have him at reasonable times during school vacations. Appellee filed a petition in September, 1922, in which he averred that he had been denied the right to see the child and prayed for a citation requiring appellant to appear and show cause why she should not be punished for contempt of court. Upon a hearing the court simply ordered that appellant should keep appellee advised as to her whereabouts and that he should have the child on Sundays. While the record states that appellant was warned as to disobeying the order of the court there was no finding that she had done so.

Appellee filed a second petition in June, 1923, in which he averred that after the entry of the former order he saw the child twice a week during the month of September, 1922; that appellant then changed her place of residence and left her new address for him but that when he called there he found the house vacant; that after some difficulty he located appellant who informed him that she had placed the child in a boarding school and that she saw him but once a week. Appellant was cited for contempt and on a hearing the court found that she had wilfully violated its

order but that no penalty would be inflicted. The court then ordered that appellee should have the custody of the child but appellant should see it at all reasonable times and have it on alternate Sundays during the daytime. Before that order was made appellant filed her petition for an allowance for solicitors' fees and expenses.

Appellant afterwards filed her petition for an allowance to enable her to pay for a transcript of the evidence and of the record and for solicitors' fees to enable her to present her case to this court and for the support and maintenance of the child. The petition was verified and showed that she was without funds; that she had been supporting the child by her own labor and that appellee had contributed nothing toward its support and had refused to do so. The court entered an order denying the prayer of the petition for the reason that the petition sets forth that appellant had been supporting the child whereas the court awarded it to appellee, and for the further reason that appellant was in contempt of court for failure to obey its decree.

It should be borne in mind that the order of September, 1922, required appellant to keep appellee advised as to her whereabouts but he was not required to advise her in case he changed his place of residence. When that order was entered both parties lived in Chicago and each knew where the other resided. Appellee was on Madison street and appellant at 1853 Monroe Street. Appellee admits he saw the child twice a week until October 1, 1922. In his petition he says that appellant moved at about that time and that she left a new address for him but when he went there he found it a vacant house. On the witness stand he said that when she moved she left no address for him. By October 15, he had received her address from his mother who had been informed by appellee's attorney to whom it had been sent by appellant. That address was 1349 East 47th Street. He

says he went to that address several times but did not find her at home until on a Sunday evening about 7 o'clock, along about the middle of October. He says that when he arrived she was ready to take the boy to the Home and he had but little chance to speak to the child.

Appellant says that on the occasion last referred to appellee had told her he would be there to see the boy about 3.30 p. m. and that he did not arrive until 6.30 or later and that she and the boy had waited for him all of that time; and that she had to get the boy to the Home as he had to be in bed by 7.15. Appellee says that he went to the 47th Street address several times after that and tried to reach her on the phone at that place but did not find her and did not see her or the child until the following June. He changed his place of residence to 2015 Hainor Street in the latter part of 1922. While he does not say that he changed to another address he does admit that he received a letter addressed to him at 4604 Langley Avenue.

Appellant says that when she changed her place of residence October 1, 1922, she wrote her new address, 1349 East 47th Street, on a slip of paper and gave it to appellee; that when she moved to that place she was a clerk at Rothschild's and she could not leave the boy with the lady who had cared for him and for that reason she placed him in the Home for Dependent Protestant Children at 6323 Yale Avenue; that he attended school and Sunday School and she was promised employment at the Home and later went to work there; that she is earning $40.00 per month and gets her board and the board of the child. She says she told appellee several times that the child was in the Home and where it is located; that after he changed his address she asked him where he was living and he refused to tell her; that she then went to the Legal Aid Society and asked for assistance

in trying to locate him; that on May 5, 1923, she finally received a registered letter from him. She then consulted the attorney for the Home who wrote appellee a letter on May 5, 1923, addressed to 4604 Langley Avenue, which bore a return address. The letter never came back and no reply was received from appellee. Appellant heard nothing from appellee and became uneasy and on June 7, 1923, had the lawyer write him again at the same address and the letter was registered and appellee admits he received it but denied that he received the one of May 5, 1923.

Appellee says that appellant frequently asked him for money to buy things for the boy. The only thing he claims to have bought for the child is a pair of shoes in September, 1922. Appellant says that on one occasion when she asked him to give her something toward the support of the child he said he hadn't given her anything and that he wouldn't give her a damn cent. This was not denied by appellee.

Appellee admits that he changed his place of residence and the evidence indicates that he made two changes. Appellant says that he refused to give her his new address and he does not deny that such was the fact nor does he claim that he kept her advised in that regard. She made some efforts to locate him and keep him advised as to her whereabouts. If he did not know where she was the fault seems to be more with him than with her. If her testimony is true he knew, at all times, where the child was. Under the evidence in this record it is our opinion that the court was not warranted in finding that appellant wilfully violated its order.

In its order the court says it refrains from inflicting any penalty, nevertheless, it proceeds to take the custody of the child from appellant and give it to appellee. While she was not fined or imprisoned she was evidently punished by taking the child from her. This must have been done because of her alleged fail-

ure to keep appellee advised as to her whereabouts because the court did not find that she was no longer a fit person to have the custody of the child or that it would be for the best interests of the child to give it to appellee. In other words there was no showing or finding that conditions had changed since the court originally decided it was best that the child should remain with its mother.

A decree fixing the custody of a child is final on the conditions then existing and should not be changed afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child. 9 R. C. L. 476. That rule has been applied by our court in regard to a change in the amount of alimony originally allowed. *Cole v. Cole*, 142 Ill. 19. In that case it was held that in the absence of new facts the original decree is deemed to be *res judicata* as between the parties. We have no doubt but that the same rule should apply where the custody of a child is involved unless it is made to appear that it would be for the best interests of the child to give it to another.

In *Umlauf v. Umlauf*, 128 Ill. 378, the court left a boy 6½ years old with his mother, although a divorce was granted for her fault and the court said: "Unquestionably no other person can feel for a boy as his mother does, or to show him the love and affection, which he receives from his mother." There are many cases to the same effect. So far as the evidence shows appellant is a fit person to have the child and she has cared for him through her own efforts. Appellee has done but little, if anything, toward his support since the separation. If he really loves him he should demonstrate it by a much more liberal contribution toward his support. The best interests of the child demand that it remain with its mother.

The law makes it the duty of a father to support his minor child even though its custody is awarded

to the mother. Section 18 of the Divorce Act [Cahill's Ill. St. ch. 40, ¶ 19] gives the court ample power and authority to compel the performance of that duty. The court refused to make an allowance for that purpose because it had at that time awarded the custody to the father and because appellant was then in contempt of court. We have held that it was error to deprive appellant of the custody of the child and that appellant should not have been held in contempt of court. But even if she were in contempt the child was entitled to support and should not have been deprived of it. *Craig v. Craig,* 163 Ill. 176. A reasonable allowance should have been made. If the decision of the trial court had been in favor of appellant and appellee had appealed, it would have been proper for the court to make an allowance for solicitors' fees and the expense of defending the decree on appeal under section 15 of the Divorce Act [Cahill's Ill. St. ch. 40, ¶ 16]. *Jenkins v. Jenkins,* 91 Ill. 167. But where the wife appeals the court is without authority, in this state, to make such an allowance. *Balswic v. Balswic,* 179 Ill. App. 118; *Shaffer v. Shaffer,* 219 Ill. App. 200. The court did not err in refusing to make an allowance for attorneys' fees and expenses incident to the appeal to this court.

When a husband seeks a modification of a decree awarding the custody of a child to the wife he may be required to pay a reasonable solicitors' fee for the services rendered in the trial court. *Pike v. Pike,* 123 Ill. App. 553; *Stillman v. Stillman,* 99 Ill. 196. If the husband does not succeed in his efforts and takes an appeal the trial court may make an allowance to the wife for her solicitors' fees and expenses in looking after the appeal. *Jenkins v. Jenkins, supra.* In view of the provisions of section 15 of the Divorce Act and the authorities cited the court should have allowed appellant a reasonable solicitors' fee for services in the trial court and for her actual expenses in going to and returning from Alton, and while she was

in attendance upon the court in answer to appellee's petition. The orders of the trial court are reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded with directions.*