McDONALD, RESPONDENT, *v.* McDONALD, APPELLANT.

No. 8916

Submitted February 2, 1950. Decided May 23, 1950.

218 Pac. (2d) 929

Messrs. Rognlien and Murray, Kalispell, for appellant. Mr. Marshall H. Murray argued orally.

Mr. T. H. MacDonald, Kalispell, for respondent. Mr. Mac-Donald argued orally.

MR. JUSTICE ANGSTMAN:

The question involved on this appeal is whether the trial court erred in awarding the custody of Marsha Ann, the minor child of the parties, to plaintiff, the mother.

The parties were divorced on July 28, 1947. Marsha was then two years old and living with defendant's mother. Before the divorce was granted plaintiff and defendant agreed that the child could remain with defendant's mother until she reached school age after which plaintiff was to have her during the school months and defendant during the vacation period. Plaintiff testified to this arrangement and defendant failed to appear at the trial.

The court however declined to give full effect to the agreement with respect to custody and awarded the custody to plaintiff, the mother, with the right in her to leave the child with defend-

ant's mother so long as she saw fit to do so. The court further ordered that while the child is in the actual care and custody of the mother, defendant shall pay her $45 per month.

Shortly after the divorce, upon request of plaintiff, defendant took the child for a visit to the home of plaintiff's parents in Glacier Park where plaintiff was then living. Plaintiff never returned the child.

Plaintiff, shortly after the divorce from defendant, married Jack Cochran. He was an oil field worker and lived in the oil fields out of Cut Bank. To this union a child was born on July 2, 1948. During the confinement of plaintiff, Marsha was left by her with plaintiff's mother at Glacier Park.

On July 21, 1948, defendant filed a petition to modify the decree of divorce so far as it awarded the custody of Marsha. Plaintiff hearing of the filing of the petition left Montana with her husband and Marsha and went to California.

Since personal service of the order to show cause could not be made upon her, defendant procured an order for its publication and it was published. After hearing defendant's application, the court on September 27, 1948, modified the decree by awarding the custody to defendant. Plaintiff did not appear at the hearing either in person or by counsel.

On March 5, 1949, plaintiff, having returned to Montana with Marsha, filed application to vacate the judgment awarding custody to defendant and asked that the custody be awarded to her.

After hearing, whereat both parties were present and introduced testimony, the court found in favor of plaintiff and against the defendant and awarded the custody of Marsha to plaintiff.

The court made findings which may be summarized as follows: Plaintiff was 17 years of age when married and defendant 22. She is of the white race while defendant is a member of the Flathead Indian Tribe; defendant lives with his mother and brothers on a ranch about eight miles north of Lonepine in Sanders county; defendant owns and controls land and cattle about

four miles from the home of his mother where he proposes to establish a home for himself and his present wife, he having since remarried; much unpleasantness resulted in the home when plaintiff and defendant lived together at the home of defendant's mother and because thereof plaintiff was away working a good part of the time after Marsha was born; though the decree of divorce provided that defendant should pay $45 per month for the support of Marsha, he made no payments though well able to do so from July 28, 1947, to September 27, 1948, but he paid $585 on March 1, 1949, when faced with contempt proceedings; that Marsha is a healthy baby of normal size and weight and behaved well in court, showing great devotion to her mother and stepfather; that plaintiff and her present husband have an appropriate home in a suitable neighborhood in California where Mr. Cochran has an opportunity to go into business; that the home is almost across the street from the grade school, with a church nearby; that Mr. Cochran is devoted to Marsha and she to him and to her mother; that the defendant's present home at his mother's place is eight miles from school and that if defendant established the home which he intends to do it would be where school would be one-half mile away; that conditions in Montana are such as to cause continual and serious emotional disturbance in the child that would destroy her happiness and impair her future growth and welfare; that the McDonalds by the demeanor in court and otherwise displayed hatred of plaintiff and that the best interests and welfare of the child require that she have a fixed place to live and that there be no double custody as between her mother and stepfather, and her father and stepmother and that she should go to California with her mother; that plaintiff is fairly well educated and neat appearing and kind and considerate and that the child needs her care.

The record contains substantial evidence supporting the conclusion of the trial court in awarding the custody of Marsha to plaintiff, her mother.

There was of course evidence from which a contrary conclusion might have been reached but the responsibility of

resolving these conflicts was on the trial judge who had the opportunity, denied to us, of observing the conduct and demeanor of the parties involved.

This court is committed to the view that the welfare of the child is the paramount consideration in awarding its custody and that this must of necessity be left largely in the discretion of the trial judge with whose discretion we will not interfere except on a showing of manifest abuse of that discretion. Damm v. Damm, 82 Mont. 239, 266 Pac. 410; Boles v. Boles, 60 Mont. 411, 199 Pac. 912; Jewett v. Jewett, 73 Mont. 591, 237 Pac. 702. And see, Talbot v. Talbot, 120 Mont. 167, 181 Pac. (2d) 148 and Benson v. Benson, 121 Mont. 439, 193 Pac. (2d) 827.

Finding substantial evidence in the record sustaining the trial judge's order awarding the custody of Marsha to plaintiff, we cannot interfere with the order.

The only other point raised is that the court erred in allowing attorney's fees to plaintiff.

R. C. M. 1947, sec. 21-137, provides: "While an action for divorce is pending the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action. When the husband wilfully deserts the wife, she may, without applying for a divorce, maintain in the district court an action against him for permanent support and maintenance of herself or of herself and children. During the pendency of such action, the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary for the prosecution of the action and for support and maintenance, and executions may issue therefor in the discretion of the court or judge. The final judgment in such action may be enforced by the court by such order or orders as in its discretion it may from time to time deem necessary, and such order or orders may be varied, altered, or revoked at the discretion of the court."

Section 21-138 reads: "In an action for divorce the court or judge may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same."

Defendant contends that there is no statutory authority for attorney's fees after the divorce action is ended and after the relationship of husband and wife has terminated.

There is respectable authority supporting that view. See Hayton v. Hayton, 122 Wash. 594, 211 Pac. 745; Wallace v. Wallace, 273 Mass. 62, 172 N. E. 914; Nelson v. Nelson, 146 Ark. 362, 225 S. W. 619; Davis v. Davis, 143 Fla. 282, 196 So. 614; Bishop v. Bishop, 210 App. Div. 3, 205 N. Y. S. 542.

We think however that the weight of authority and the better reasoned cases under statutes such as ours hold otherwise. Among such cases are the following: Crooks v. Crooks, Mo. App., 197 S. W. (2d) 686; Parker v. Parker, 269 App. Div. 717, 54 N. Y. S. (2d) 172; Anderson v. Anderson, 110 Utah 300, 172 Pac. (2d) 132; Marks v. Marks, 98 Utah 400, 100 Pac. (2d) 207; (Resisting alimony and change of custody of children, Hipple v. Hipple, 128 Kan. 406, 278 Pac. 33); Tinker v. Tinker, 144 Okl. 94, 290 Pac. 187; Thomas v. Thomas, 233 Ill. App. 488; Spratt v. Spratt, 151 Minn. 458, 185 N. W. 509, 187 N. W. 227; Novotny v. Novotny, 152 Minn. 420, 189 N. W. 258.

The reason for such holding was well stated in the Crooks case as follows: "It is true that the decree of divorce had become final so far as concerned its determination of the issue of the further status of the parties. Its consequence had been to convert their status from coverture to that of single persons, and defendant was unquestionably no longer plaintiff's wife. However the action for divorce, under the circumstances of the case, had invested the court with a jurisdiction which did not end with the mere determination of the further status of the parties themselves. There being minor children within plaintiff's physical control; it had acquired jurisdiction to adjudicate with respect to their custody; and this jurisdiction was a continuing one dur-

ing the minority of the children. For the purpose of the exercise of such jurisdiction, the action remained pending during the minority of the children; and in this proceeding on plaintiff's motion to modify the decree, which was a continuation of the original action, the court had the power to make an allowance to defendant of an attorney's fee and suit money so as to enable her to resist the motion.'' [197 S. W. (2d) 687.]

We allowed an attorney's fee in State ex rel. Graveley v. District Court, 119 Mont. 276, 174 Pac. (2d) 565, in such a proceeding.

Defendant relies upon the case of Grimstad v. Johnson, 61 Mont. 18, 201 Pac. 314, 25 A. L. R. 351. But that case is not comparable to this since in that case the divorce action was dismissed and there was no continuing jurisdiction left in the court over any phase of the subject matter of the action.

It is our view that section 21-137, supra, is broad enough to ██ warrant the court in awarding to plaintiff expenses with which to prosecute the proceedings seeking a modification of the award of custody of the minor child.

Also, even though the statute does not specifically authorize ██ such fees after the divorce is granted, the court has inherent equitable power incidental to its major jurisdiction to make such an award. This court has so held in State ex rel. Wooten v. District Court, 57 Mont. 517, 189 Pac. 233, 9 A. L. R. 1212, and in State ex rel. La Point v. District Court, 69 Mont. 29, 220 Pac. 88. This is the rule also in California. Galland v. Galland, 38 Cal. 265; Livingston v. Superior Court, 117 Cal. 633, 49 Pac. 836, 38 L. R. A. 175, and see, 34 Cal. Law Rev. 191 at p. 196.

It is true that these two cases from this court are not cases involving the custody of children as is the case before us, but the legal principle is the same.

The Wooten case was one brought for the annulment of a marriage. The court pointed out that there was no statute allowing attorney's fees in such a case but then proceeded to hold that

even without such statute the court had "fundamental jurisdiction to grant * * * suit money and attorney's fees to the wife * * * as a power incidental to the major jurisdiction." [57 Mont. 517, 189 Pac. 239.]

The La Point case was one for separate maintenance. The statute allows attorney's fees to the wife for such a suit when based upon wilful desertion of the husband. It does not allow a fee when the action is based on wilful neglect of the husband. The action was for his wilful neglect and the court held that it had inherent jurisdiction to grant attorney's fees and suit money and no statute was necessary to confer such jurisdiction. To hold that the wife is not entitled to suit money and attorney's fees in such a case places her at a decided disadvantage when trying to protect her right of custody to her minor children.

The fact that the order directs the payment to plaintiff's attorney rather than to plaintiff is an irregularity merely which does not affect any substantial right of defendant.

The court made an award of $150 and expressly found that "plaintiff was unable to pay her attorney for such services." Certainly that is not an exorbitant fee. The fact that defendant paid plaintiff $585 a few days before the trial is of no moment. That was money due for the past support of the child and defendant should not be heard to say that it should be used to pay plaintiff's counsel.

Nor is it of importance that both parties have married since the decree of divorce was granted. Defendant is still the father of the child and plaintiff is the mother of the child.

The father should not be permitted to precipitate litigation over the child's custody as between himself and the child's mother without being obliged to furnish suit money to enable the mother to bear the expense of such litigation. Her present husband though perfectly willing to support the child may not be willing to stand the expense of litigation to retain the custody.

The court did not exceed its power or abuse its discretion in making the award of $150 attorney's fees.

The order appealed from is affirmed.

34

ASSOCIATE JUSTICES FREEBOURN and METCALF concur.

MR. JUSTICE BOTTOMLY:

I dissent to that part of the majority opinion affirming the judgment of the lower court allowing attorney's fees to plaintiff.

Here the plaintiff has again married. The defendant likewise has married. The decree of divorce had long before this action arose become final. All actions for divorce are strictly statutory.

"Where allowances for expenses of suit and counsel fees of the wife are, by statute, specifically provided for it is usually held that her right to such allowances is purely statutory and cannot be extended by the court; hence such allowances can be made only in accordance with the terms of the statute; * * *.

"The right of the wife to counsel fees is not an absolute right, especially in the absence of statute specifically authorizing an allowance, in which case she must make a prima facie showing on a proper hearing." 27 C. J. S., Divorce, sec. 216, pp. 910-911, and cases cited.

In State ex rel. Wooten v. District Court, 57 Mont. 517, 522, 189 Pac. 233, 9 A. L. R. 1212, the action was for annulment. In that case the court said: "That the courts of this state have no inherent power, either as courts of law or equity, to dissolve marriage, and that the power to decree a divorce is *purely statutory*, has been determined by this court. Rumping v. Rumping, 36 Mont. 39, 91 Pac. 1057, 12 L. R. A., N. S., 1197, 12 Ann. Cas. 1090. This is so because of the fact that, at the time our forefathers brought with them the common law of England, neither courts of law or equity had jurisdiction in such matters; they being handled exclusively by the ecclesiastical courts. 2 Bishop on Marriage and Divorce, 431. The first legislative assembly of the territory, therefore, provided for actions for divorce, * * * and provided for the granting of alimony, both permanent and temporary, in all such actions." Emphasis supplied. The court then reviewed the history of the legislation relative to the subject of divorce, support and maintenance and annulment, and

found that the statute did not provide or authorize the allowance of an attorney's fee in actions for annulment, stating.

"It is therefore evident that whatever statutory authority the court now has in awarding alimony must be found in said section 3677 R. C. M. 1947, sec. 21-137, Revised Codes. * * *.

"Section 3677 authorizes the court to grant temporary alimony in but two classes of cases, to wit: 'While an action for divorce is pending,' and 'during the pendency of' actions for support and maintenance. We are impelled, therefore, to the conclusion that there is no statutory authority in this state for the making of such an award as that complained of."

In State ex rel. La Point v. District Court, 69 Mont. 29, 220 Pac. 88, 91, which was an action for separate maintenance, in interpreting this part of the section, this court said, "* * * that the right to grant maintenance without a decree of divorce is recognized by section 5768, supra (Rev. Codes of 1921, now R. C. M. 1947, sec. 21-136), and that the statute expressly imposes *upon a husband* the duty to support *his wife,* we conclude that the court is possessed of power to grant a decree for separate maintenance, together with alimony, attorney's fees, and suit money, *during the pendency of an action* instituted for that purpose * * *." Emphasis supplied.

Thus did this court hold in the La Point case, supra, that *during the pendency of an action for separate maintenance* the court has jurisdiction on proper showing to allow an attorney's fee to the husband's wife. However such holding does not empower the trial court to allow an attorney's fee under the facts herein, long after the decree granting an absolute divorce has become final.

In Grimstad v. Johnson, 61 Mont. 18, 201 Pac. 314, 315, 25 A. L. R. 351, Chief Justice Brantly, speaking for a unanimous court, said:

"We shall not stop to inquire what power the courts in this jurisdiction would have had at common law in divorce cases to require the husband to pay the fees of counsel employed by the

wife. The statute declares the extent of the power and, in our opinion, *is exclusive;* for 'in this state there is no common law in any case where the law is declared by the Code or the statute' (section 8060, Rev. Codes [1907]), and 'the Code establishes the law of this state respecting the subjects to which it relates' (Section 8061). It requires but a casual reading of section 3677, supra (Rev. Codes 1907), to ascertain that the object of the Legislature in enacting it was to give the courts discretionary power, to be exercised *during the pendency of the action upon proper showing by the wife in an application for that purpose,* to compel the husband to provide the means necessary to enable her to prosecute or defend the action. * * *

''Upon examination of the decided cases in other states which have the same or similar statutory provisions, we find that their courts generally agree that *counsel fees may be allowed only while the divorce action is pending.* (Citing cases.) * * * The rule was impliedly recognized by this court in the case of Bordeaux v. Bordeaux, 29 Mont. 478, 75 Pac. 359; s. c., on rehearing, 32 Mont. 159, 80 Pac. 6. In that case it was held that a district court has no power under the statute to allow counsel fees for *past services,* even during the pendency of the divorce proceedings; the only possible exception to this being, perhaps, where the allowance for such past services would be necessary to enable the wife to continue the future prosecution of the action or to make her defense.'' Emphasis supplied.

Since the statutes do not empower the trial court to allow counsel fees for past services, even during the pendency of the divorce action, it necessarily follows that, after the divorce action is terminated, the trial court may not entertain an independent action by counsel against the husband for services rendered for the wife during the pendency of such independent action. See Albrecht v. Albrecht, 83 Mont. 37, 269 Pac. 158.

In Rumping v. Rumping, 36 Mont. 39, 91 Pac. 1057, 1058, 12 L. R. A., N. S., 1197, 12 Ann. Cas. 1090, this court said, ''It is elementary, of course, that neither courts of law or equity have

any inherent power to dissolve marriage. The power to decree a divorce is purely statutory.''

In Sell v. Sell, 58 Mont. 329, 193 Pac. 561, 562, this court said, ''In this jurisdiction the power to decree a divorce is purely statutory. Rumping v. Rumping, 36 Mont. 39, 91 Pac. 1057, 12 L. R. A., N. S., 1197, 12 Ann. Cas. 1090.

''A court of equity has no inherent jurisdiction of a suit for divorce, the authority to hear and determine the same being derived from statute.'' Nield v. Nield, 126 W. Va. 430, 28 S. E. (2d) 825, 826; McCotter v. Carle, 149 Va. 584, 140 S. E. 670; Schouler on Marriage, Divorce, Separation and Domestic Relations, 6th Ed., Vol. 2, sec. 1468. Our Constitution by section 1 of Article III, declares, ''All Political power is vested in and derived from the people.''

The only statutory authority for allowing suit money or attorney fees is that contained in R. C. M. 1947, section 21-137, which as far as pertinent here, provides that while *an action for divorce is pending* the judge may, in his discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action in divorce.

R. C. M. 1947, section 93-8706, provides: ''An action is deemed to be pending from the time of its commencement *until its final determination upon appeal,* or *until the time for appeal has passed,* unless the judgment is sooner satisfied.'' (Emphasis supplied.) McCormick v. Shields, 63 Mont. 9, 12, 205 Pac. 831; Peterson v. City of Butte, 44 Mont. 129, 120 Pac. 231; Bordeaux v. Bordeaux, 26 Mont. 533, 534, 69 Pac. 103, Id., 29 Mont. 478, 482, 483, 75 Pac. 359; 1 C. J. S., Actions, sec. 142, p. 1421.

''The power of the trial court in an action for divorce to make an allowance to the wife for her support or to enable her to defend or prosecute the action exists *as long as the action is pending,* which is from the time of the commencement thereof 'until its final determination on appeal, or until the time for appeal has passed, unless judgment is sooner satisfied'.'' (Em-

phasis supplied.) 1 Cal. Jur., "Alimony and Separate Maintenance," sec. 25, p. 972. See also: Dunphy v. Dunphy, 161 Cal. 87, 118 Pac. 445, and cases cited; Loveren v. Loveren, 100 Cal. 493, 494, 35 Pac. 87.

The proceedings for divorce are purely statutory, and the powers which the court exercises are only those conferred upon it by statute. The court merely exercises the special power with which it is invested by statute, and not according to the course of common law. See state ex rel. Tolls v. Tolls, 160 Or. 317, 85 Pac. (2d) 366, 119 A. L. R. 1370.

The trial court, in an action for divorce and alimony, derives its power solely from statutes and has no general equity jurisdiction inherent in courts of chancery. See Owens v. Owens, 85 Ohio App. 414, 88 N. E. (2d) 922.

Divorce jurisdiction of district courts is purely statutory and such courts have only those powers delegated to them by statute. See State ex rel. Gravelle v. Rensch, Minn., 1950, 40 N. W. (2d) 881.

Jurisdiction of a court of equity in a suit for divorce is restricted to powers conferred by statute, and courts of equity have no inherent power in cases of divorce. See Pressney v. Pressney, 339 Ill. App. 371, 90 N. E. (2d) 119.

The divorce statute must be accorded a strict construction. The statute is the sole source from which jurisdiction in divorce actions must be sought. See Wilkins v. Wilkins, 4 Terry 245, 43 Del. 245, 45 A. (2d) 536.

Jurisdiction relative to divorce and alimony is given by statute, and every power exercised by a court with reference thereto must find its source in the statute or it does not exist. See Dier v. Dier, 141 Neb. 685, 4 N. W. (2d) 731.

Trial courts have only such jurisdiction in divorce matters as the legislature confers on them. See Swenson v. Swenson, 245 Wis. 124, 13 N. W. (2d) 531.

Courts of New York have no common law jurisdiction over the subject of divorce and must act within the limits of power con-

ferred by statute. See Haas v. Haas, 183 Misc. 870, 51 N. Y. S. (2d) 931.

Strictly speaking, a proceeding in divorce, with its incidentals of suit money, attorney's fees and maintenance is *sui generis* wherein the extent of the court's authority is prescribed and limited wholly by statute. In Shaw v. Shaw, 122 Mont. 593, 208 Pac. (2d) 514, 525, this court said, "The power of courts in divorce actions is to be determined entirely upon the terms of the statutes conferring jurisdiction."

In Emery v. Emery, 122 Mont. 201, 200 Pac. (2d) 251, 264, this court said: "It is well established that the powers of courts in matrimonial matters are to be determined entirely upon the terms of the statutes conferring the jurisdiction."

The trial judge was correct where in his finding No. XI, he stated, in considering the allowance of the attorney's fee, that "However, as the statute [R. C. M. 1947, sec. 21-137] is not complete enough to authorize the same," but was in error in finishing the paragraph with, "it seems that under the equity jurisdiction of this court, this is a proper case for such allowance."

Not only is the last above quoted part of the finding incorporated in the judgment erroneous for want of statutory authority but the order and judgment erroneously directs the fee not to be paid to the plaintiff who is, under any theory the only person to whom it could be adjudged, but it further erroneously orders the defendant to pay the fee direct to plaintiff's attorney.

This court may not read into the above quoted section 21-137 any such authority. The legislature did not provide for the exaction of such fees. A statute so clear and unambiguous should need no interpretation. Not only is there no authority in law for the allowance of attorney's fees under the facts in this case, but the record further shows herein that there was no adequate showing whatever of plaintiff's need or necessity therefor. On the contrary the record discloses that plaintiff received from defendant some $585 but a few days prior to the hearing. In

Albrecht v. Albrecht, supra, this court said, ''We have searched the record in vain to find any evidence whatever, offered on the part of the defendant, showing the *necessity for the allowance of attorney fees* as made by the court, and we hold that *such allowance* was an abuse of discretion and was error.'' [83 Mont. 37, 269 Pac. 161.] Emphasis supplied.

In the case of Crooks v. Crooks, Mo. App., 197 S. W. (2d) 686, it should be kept in mind that there the Missouri court had under consideration and interpretation the Missouri statute dealing with alimony and maintenance which is not similar to the Montana statute, section 21-137, supra. Further it should be noted that Missouri has no statute similar to our section 93-8706, supra.

A divorce action under our statutes is not an action in equity. Although the procedure employed therein closely follows that provided for the trial of suits in equity, yet a divorce suit is strictly a statutory action, separate and distinct from both actions at law and suits in equity; as before stated, the proceeding is *sui generis*.

The duty of the husband under the statute grows out of the obligations imposed by the marital relation while it exists and not out of any duty or obligation to provide attorney fees for his former wife's future actions as a single woman or as the present wife of another man.

Here the action for divorce was not *pending*. The absolute decree of divorce had been entered and had become final long before the instant proceeding was commenced or heard. The parties were no longer husband and wife. Each had become married to a different spouse. The status of each had changed. There was and is no authority under the statutes for the court to assess or allow attorney fees. And the record further shows that at the hearing plaintiff testified in substance that she had never asked defendant for any money and that he could keep his money.

For these reasons, the allowance of attorney's fees by the judge was wholly without authority, contrary to law and error. The

portion of the order and decree allowing attorney's fees should be stricken, set aside and vacated.

MR. CHIEF JUSTICE ADAIR:

I concur in the foregoing dissenting opinion of MR. JUSTICE BOTTOMLY.